## In re Road in Londonderry Township

*William H. Dunbar*, for plaintiff.

*Metzger & Wickersham*, for Londonderry Township Road Supervisors.

WOODSIDE, J., December 26, 1950.—This comes before us on exceptions and petition for review filed to the report of the Supervisors of Londonderry Township vacating that part of a township road which is now occupied by the Pennsylvania Turnpike. Testimony heard by the court indicated that the eastern extension of the Pennsylvania Turnpike crosses township road no. 498 in the township.

This township road extends north and south eight tenths of a mile, starting at township road no. 323, which runs east and west. Three tenths of a mile west of the road in question, township road no. 498 runs parallel with it, extending from no. 323, four tenths of a mile to road no. 321. Road no. 321 extends in a southeasterly direction from road no. 496 to road no. 498, one half of a mile. (The distances, and more particularly the directions, are approximations.) The turnpike passes by bridge over road no. 496 and of course does not interfere with traffic on it. The road in question is completely cut by the turnpike, leaving dead ends, the northern part approximately three tenths of a mile from a connecting road, and the southern part approximately one half mile. The supervisors approved the vacating of only that part of the road occupied by the turnpike. The balance is to remain open as a township road.

The evidence shows that the road in question has always been in relatively poor condition and infrequently used. The close by parallel road no. 496 is along the Swatara Creek and is impassable several times each year because of flood waters. During such emergency periods road no. 498 is used as a detour by certain landowners in the immediate vicinity.

Prior to the condemnation proceedings, the Turnpike Commission suggested that the Township Supervisors of Londonderry Township should close the part of the road in question which was then to be, and now is,

occupied by the turnpike, and for doing this the commissioners agreed to pay the supervisors $12,000, which could be used by them in improving their nearby roads. The commission further advised the supervisors that if the road was not closed by them, the commission would proceed to have it closed under the authority given it by section 6, subsec. (i) of the Act of May 16, 1940, P. L. (1941) 949, 36 PS §653e.

The supervisors thereupon proceeded under the Act of May 1, 1933, P. L. 103, sec. 1101 as amended, 53 PS §19093-1101. This section provides as follows:

"The township supervisors may enact, ordain, survey, lay out, open, widen, straighten, vacate and relay all roads and parts thereof which are wholly within the township, upon the petition of a majority in interest of the owners of property or properties through whose land such road passes, or upon whose land it abuts, or without petition of the owners of abutting property, if in the judgment of the supervisors, it is necessary for the public convenience."

Section 1102 of the above act (added thereto by the Act of July 10, 1947, P. L. 1481) provides, inter alia, as follows:

"(a) The supervisors shall give ten days' notice to the property owners affected thereby of the time and place when and where all parties interested may meet and be heard. Witnesses may be summoned and examined by the supervisors and by the parties interested at such meeting or any adjournment thereof." . . .

"(e) After the passage or approval of any ordinance by the supervisors for the opening, widening, straightening, extending or vacating any road, notice shall, within ten days thereafter, be given by handbills, posted in conspicuous places along the line of the proposed improvement. Such notice shall state the fact of the passage or approval of the ordinance and the date of the passage or approval."

It is the contention of petitioners that the supervisors did not give proper notice of the time and place when and where all parties interested could meet and be heard, as required by clause (*a*) of section 1102, and that proper notice of the passage of an ordinance vacating road no. 498 was not given as required by clause (*e*) of this same section.

The report of the Supervisors of Londonderry Township filed in the office of the Clerk of the Court of Quarter Sessions of Dauphin County on August 16, 1949, sets forth that the notice of hearing as required by law was given and that proper legal notice of the passage of the ordinance was also given. We therefore start with the presumption that the proceedings to close the road were valid and the requirements of the law complied with.

The testimony taken by the court shows that a meeting was held in Iron Mine Schoolhouse in Londonderry Township on June 2, 1949, at 8:30 p. m. where the matter of vacating the road was fully discussed by those present.

The evidence further shows that notices of this meeting were prepared by the supervisors' solicitor, and apparently one or more of petitioners were served with this notice. All of the petitioners whose land adjoined road no. 498 were present or represented at the meeting and made no complaint at that time of not having received proper or sufficient notice. Their presence would indicate that notice was received by them. Under any circumstances their presence at the meeting without objection at that time to the manner of notice which brought them there gives them no standing to now object on the grounds that they were not properly notified.

The only person owning land adjoining the part of the road vacated is Max Lauffer, one of the petitioners. The only other persons owning property along road no.

498 are Christine Konavitch, Clarence S. Herr and possibly, John Zeiders. Petitioners Helsel, the Londonderry Township School Board and C. C. Cranford owned no property along road no. 498. We think those who did not own property along this route were not entitled to notice as "property owners affected" by the vacating. Many property owners—the baker, the butcher, the coalman and others who have been using the road—are in a sense "affected" by its being vacated. But to extend the meaning of "property owners affected" to all such people would be an unreasonable interpretation.

It is the contention of the supervisors that Lauffer alone was entitled to notice as a "property owner affected". This contention is not without merit. At least it might be said that he was the only owner of property affected. We are not however prepared to hold that as a matter of law this contention is sound nor do we find it necessary to pass specifically upon it. We shall proceed upon the theory that all those owning property along road no. 498 were property owners affected by the action of the supervisors. As previously pointed out, all of the petitioners were present or represented at the meeting and therefore had notice of it and cannot be heard to object to the form of notice.

A more serious question relates to Clarence S. Herr. He owned a tract of land along the road but not adjoining that part which was vacated. No person lives on this tract and the supervisors did not know his address or where to locate him and did not serve him with any notice. He was not present at the meeting of June 2nd and had no opportunity to object until after the supervisors acted to vacate the road. When supervisors are proceeding under this section they should make every effort to contact the owners of property along the road and attempt to serve them with notice of the intended action. When owners of land cannot be

located, the public cannot be compelled to suffer because of such a situation. If after reasonable effort to find the owners of land they cannot be located, tacking notices on the land should be sufficient.

Whether proper effort to find Herr was made does not appear. Under any circumstances he did not receive notice of the proposed vacating of the road.

But he is not here objecting. Those who are objecting were present or represented at the meeting. They have no standing in law to object that Herr had no notice when he himself, although a witness at the hearing, is not a party to the case and thus is not objecting. See Cornplanter Township Road No. 1, 26 Pa. Superior Ct. 20, 27 (1904).

Notice of the passage of the ordinance is required by the above quoted statute. The report says the notice was given. The evidence throws doubt that this part of the report is correct. For some time now the part of the township road covered by the ordinance has been occupied by the Pennsylvania Turnpike. Assuming that the proper notice of the passing of the ordinance was in fact not given we could return the matter to the supervisors with direction to give the required notice (Road in Fairview Township, 16 York 155), but under the peculiar circumstances of this case it would be a vain thing to do. The notice that the road is closed has been emphatically and universally given to all who could possibly wish to know about it by the quite noticeable presence of the Pennsylvania Turnpike.

Under all the circumstances we think the exception should be dismissed and the report approved.

And now, December 26, 1950, the exceptions are dismissed, and the report of the Road Supervisors of Londonderry Township approved, and the portion of township road no. 498 vacated in accordance with the report.